United States District Court
Southern District of Ohio
Western Division

| | | |
|---|---|---|
| **Larry J. Mounts** | :: | |
| Plaintiff, | | |
| | :: | Case No. |
| | :: | |
| vs. | :: | Judge |
| **Roadstar Motors LLC.** | | |
| c/o Anis Sherradi | :: | |
| 3175 Dixie Highway | :: | U.S. Magistrate Judge |
| Hamilton, OH 45015 | | |
| | :: | |
| Defendant. | :: | |
| | :: | |

**Civil Complaint Alleging Violation of the Federal Truth-in-Lending Act and the Ohio Consumer Sales Practices Act; Attorney Fees & Costs; Demand for Jury Trial**

## JURISDICTION AND VENUE

1. This Court has jurisdiction under the federal truth-in-Lending Act, U.S.C.§1640(e) and 28 U.S.C. §§ 1331 and 1337. Further, the Court may exercise its supplemental jurisdiction of all state law claims plead herein by virtue of its constitutional authority under Article III and 28 U.S.C. 1367 in that Plaintiff's state law claims are so related to his federal claim that they form part of the same case or controversy. Venue is proper because the events that took place occurred entirely in this Division.

## PARTIES

2. Plaintiff, Larry J. Mounts [hereinafter "Plaintiff"] is an individual consumer who resides in the state of West Virginia, Mason County, who is a "retail buyer" as the term is defined in R.C. 1317.01(G), a "consumer" in 15 U.S.C. §1602(i) and 1345.01(D) as defined in both the federal truth in lending act and the Ohio Consumer Sales Practices Act, who further engaged in a "credit sale" as defined in 15 U.S.C. 1602(h), a "consumer transaction" as it is defined in R.C. 1345.01(A) and a "retail installment sale as defined in R.C. 1317.01(A) under the Ohio Retail Installment Sales Act.

3. Defendant, Roadstar Motors [hereinafter "Roadstar" or "Defendant"] is a domestic corporation and a creditor as defined in TILA, 15 U.S.C. §1602(g) who, in the ordinary course of business extends or arranges for the extension of credit, a "retail seller" as the term is defined in R.C. 1317.01(i) and a "supplier" as the term is defined in R.C. 1345.01(C).

## SPECIFIC FACTUAL ALLEGATIONS

4. On or about April 3, 2024 Plaintiff and his wife were searching on Facebook Marketplace when they found an advertisement for a 2016 GMC Canyon 2.8 diesel and with the price was listed as $16,999 [hereinafter the "subject" vehicle"].

5. On April 9, 2024 Plaintiff and his wife filled out a credit application online in which they stated that they expected to make a $1000 cash down payment and to trade in their 2014 Toyota Tundra which, according to both the Kelly Blue Book and Edmonds was worth $14,000, where they would thereafter be able to finance what they believed would be a modest difference of only a few thousand dollars.

6. On or about April 10, 2024 Plaintiff and his wife drove to Defendant in nearby Hamilton, Ohio where they were greeted by Dontae Sturgill [hereinafter "Sturgill"] who acted both as Defendant's salesman and finance person. Shortly thereafter everyone entered a room to begin a transaction involving both the purchase and

the financing of the subject vehicle. Both the Plaintiff and his wife sat directly across from Sturgill at his desk where Sturgill initially turned a computer screen toward Plaintiff. Plaintiff then informed Sturgill that he was dyslexic and couldn't read or write which is why he was accompanied by his wife. Strangely, Sturgill then turned the computer screen back towards himself and never turned it back toward Plaintiff and his wife again. There were a series of several sessions whereby the parties would enter, leave and re-enter the room where Sturgill would never display any of the documents that Plaintiff was asked to sign but merely described them requesting that Plaintiff affix his electronic signature to each. Eventually all the documents were executed and the Plaintiff took possession of the subject vehicle with a temporary plate and drove back home.

      7. At the heart of the transaction is a retail installment sales contract and obligation executed between the parties. Plaintiff traded in his 2014 Toyota Tundra along with $1000 in cash which he assumed was going to be deducted from the $16,999 advertised price of the subject vehicle leaving only a small amount to be financed. The obligation was immediately assigned to Credit Acceptance Corporation of Southfield, Mich. which took the obligation subject to all claims and defenses would could have been asserted against the Plaintiff.

      8. The following day Plaintiff and his wife had a chance to carefully review the Retail Installment Sales Contract and were shocked to observe that the cash price they had agreed to pay for the vehicle was not $16,999.00 as had been advertised but $28,999; a $12,000.00 difference. To which was added finance charge and other charges and fees which resulted in a total of payments of $33,993.00 obviously, significantly more than what they expected.

      9. To add to this Defendant failed to transfer title to the subject vehicle and has therefore, as a matter of law, violated R.C. 4505.181(B)(1) for failing both to do so within 30 days of sale having title and 40 days if not.

## Claim One-Federal Truth in Lending Act Violation

10. Plaintiff hereby incorporates each and every allegation of paragraphs 1-9 as if fully rewritten herein.

11. This claim is brought under the federal truth-in-lending act, 15 U.S.C 1601, et seq. for failing to make accurate credit disclosures required by 15 U.S.C. 1638(a) under a closed-end credit transaction [hereinafter referred to as the "Act"].

12. Prior to April 10, 2024 Defendant, in a number of locations and primarily online at various websites advertised the price of the subject vehicle as $16,999.

13. However, when Defendant sold the subject vehicle it, instead, charged Plaintiff $28,999; a full $12,000 in excess of the advertised price.

14. When confronted with the overcharge Defendant asserted that the advertised price of $16,999 for the vehicle was "a special cash price" solely intended for cash buyers; all others who financed the sale Defendant claimed would pay a higher price. In other words, the overcharged price, according to Defendant, was a charge which was incident to the extension of credit.

15. Had Defendant actually sold the subject vehicle for the advertised price of $16999, as it was required to do, adding the tax assessed of $2310.28 and deducting the $10,500.00 credited for Plaintiff's trade-in and down payment, the "unpaid balance of the cash price" would have been $8809.20 instead of $20,809.28 disclosed by the Defendant. To this inflated figure Defendant added its $250 documentary fee, $35 title fee and the $744 GAP protection making the amount financed it disclosed as $21,838.28 when, in fact, the amount financed should have been no more than $9838.20.

16. Even accepting the Defendant's high 18.99% APR assessment Defendant, as a direct consequence of its actions, the "**amount financed**", the "**finance charge**", "**total of payments**" and "**total sale price**" all of which were required to be accurately disclosed under the Act pursuant to 15 U.S.C 1638, were all inaccurately disclosed.

17. The correct and accurate disclosure of credit terms, based on a sale at the advertised price should have been as follows calculated with a $10,500 downpayment:

| | |
|---|---|
| Amount financed: | $9838.20 |
| Finance charge: | $5591.24 |
| Total of payments: | $15313.61 |
| Total Sale Price: | $25929.44 |

18. Additionally the amount of each monthly payment to payoff the loan must, by necessity, be significantly less and, therefore, inaccurately disclosed as well and should have been $255.24 and not $566.65 and, therefore, inaccurately disclosed.

19. Consequently, Plaintiff is entitled to statutory damages of twice the finance charge but, in this case, no more than $2000 pursuant to 15 U.S.C. 1640.

20. Additionally, Plaintiff, may be able to prove actual damages of $18,679.39 which is the difference between the total of payments inaccurately disclosed and as it should have been disclosed.

### Claim Two: Violation of the Ohio Consumer Sales Practices Act

21. Plaintiff hereby incorporates each and every allegation of paragraphs 1-9 as if fully rewritten herein.

22. This claim is made under Ohio's Consumer Sales Practices Act, R.C. 1345.01, et seq. [hereinafter the "Act"]

23. On or about April 10, 2024 the parties entered into a consumer transaction as it is defined in R.C. 1345.01(A) for the sale and financing of a motor vehicle; namely, a 2016 GMC Canyon [hereinafter the subject vehicle].

24. Plaintiff, for purposes of the Act, is to be considered a "consumer" and the Defendant a "supplier".

25. Plaintiff is and was at all times referenced herein dyslexic who couldn't read or write.

26. Before, during and after the consummation of the consumer transaction, Defendant committed the following unfair, deceptive or unconscionable sales practices each of which should be considered a separate count or violation hereof.

27. By selling the subject vehicle for $12,000 in excess of the price it advertised.

28. Subsequent to the sale of the subject vehicle failing to transfer the title to the subject vehicle to the Plaintiff within 30 or 40 days as required under R.C. 4505.181(B)(1).

29. By assessing the Plaintiff sales tax of $2310 which was far in excess of the 6% lawful limit in both the states of Ohio and West Virginia.

30. By falsely representing that it would pay $14,500 and only paying $9500.00 in trade for Plaintiff's 2014 Toyota Tundra.

31. Without limiting the scope of the number or any of the violations the Defendant may have committed herein, its conduct, therefore, constituted the following deceptive, unfair or unconscionable sales practices under either or both R.C. 1345.02 and R.C. 1345.03 committed before, during and after the consummation of a consumer transaction as follows:

   (a) That the subject vehicle had sponsorship, approval, performance characteristics, accessories, uses, or benefits that it did not have under R.C.1345.02(B)(1);

   (b) That the subject vehicle was available for a reason that didn't exist pursuant to R.C.1345.02(B)(4);

   (c) That a specific price advantage existed, when it did not under R.C.1345.02(B)(4);

   (d) Defendant knowingly took advantage of the inability of the Plaintiff to reasonably to protect his interests because of the Plaintiff's dyslexia and inability to read and write pursuant to R.C. 1345.03(B)(1);

    (e) Defendant knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers pursuant to R.C. 1345.03(B)(2);

    (f) Defendant knew at the time the consumer transaction was entered into of the inability of the Plaintiff to receive a substantial benefit from the subject of the consumer transaction pursuant to R.C. 1345.03(B)(3);

    (g) Defendant required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier pursuant to R.C. 1345.03(B)(5);

    (h) Defendant knowingly made a misleading statements of opinion on which the Plaintiff was likely to rely to his detriment pursuant to R.C. 1345.03(B)(6);

32. Specifically, the conduct of failing to transfer title to the subject vehicle either in 30 or 40 days from the date of sale committed by the Defendant has been declared either deceptive, unfair or unconscionable practice contained in the Ohio Attorney General's Public Inspection File in the case of ***State of Ohio, ex rel. Michael DeWine, Attorney General of Ohio vs. Kellie Auto Sales***, (Franklin Cty C.P.2015). AG's Public Inspection File #3236 which potentially entitles Plaintiff to treble his damages.

**Prayer for Relief**

**WHEREFORE,** plaintiff prays for the following relief:

(a) In claim one $2000.00 in statutory damages;

(b) In claim one to actual damages of $18,679.39;

(c) In claim two the right to elect either rescission or actual or treble damages in an amount to be proven;

(d) In all claims reimbursement for reasonable attorney fees for all work performed reasonably related to the prosecution of all claims;

(e) In all claims for reimbursement for all costs and fees reasonably expended and related to the prosecution of all claims;

(f) For a trial by jury on all related and appropriate issues; and,

(g) For any and all other relief this Court may find appropriate.

Respectfully submitted by:

*/s/Steven C. Shane*
Steven C. Shane (Ohio Bar #0041124)
Trial Attorney for Plaintiff
P.O. Box 73067
Bellevue, Ky. 41073
(859) 431-7800
(859) 431-3100 direct dial
shanelaw@fuse.net