## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LARRY JOE MOUNTS,

    Plaintiff-Counter Defendant,

    v.

ROADSTAR MOTORS, LLC,

    Defendant-Counter Claimant.

Case No. 1:24-CV-312

Judge Michael R. Barrett

**OPINION & ORDER**

This matter is before the Court on the motion for summary judgment filed by Plaintiff Larry J. Mounts, (Doc. 27), and the cross-motion for summary judgment filed by Defendant Roadstar Motors, LLC, (Doc. 36). Also before the Court is Roadstar's motion to strike Mounts's motion for summary judgment and its accompanying exhibits. (Doc. 32).

## I.  BACKGROUND

In early-April 2024, Mounts and his wife, Bobbi Jo DeBruhl, saw a Roadstar advertisement on Facebook Marketplace for a "2016 GMC Canyon with 148K miles at a cash deal special price of $16,999." (Doc. 7, PageID 56). After filling out an online credit application and speaking over telephone with Roadstar salesperson Deontae Sturgill to confirm that the Canyon (hereinafter, "the vehicle") was still available, Mounts and DeBruhl drove from their home in Gallipolis Ferry, West Virginia, to Roadstar's dealership in Hamilton, Ohio, on April 10. (Doc. 27, PageID 391).

After Mounts and DeBruhl examined the vehicle, they entered the dealership to discuss a potential purchase with Sturgill. Mounts asserts that he "informed Sturgill that he was dyslexic where he received monthly social security disability benefits for his condition," and "therefore, chose to trust [Sturgill] to read and describe each of the documents on which he authorized his electronic signature to be placed." (Doc. 27, PageID 391). However, in his deposition testimony, Mounts said that he was watching "Wolf of Wall Street" on a television in the dealership, and when Sturgill attempted to show him something on the computer screen, he responded "I cannot read that, but my wife can." (Doc. 31, PageID 710).

Mounts then represented that Sturgill turned the computer screen away and would not let him or DeBruhl see what was on it. (*Id.*). Roadstar disputes this through Sturgill's sworn affidavit, in which he says that DeBruhl "sat down in [his] chair and began reading the sales agreement. Some of it she read aloud, the rest I assume she read to herself." (Doc. 33, PageID 758). The summary judgment record is rife with factual disagreements between the parties, including whether Mounts and DeBruhl had a conversation with Sturgill about financing terms and the final price of the vehicle.

What the parties do not dispute is that Mounts made a down payment of $10,500, which consisted of a $1,000 cash payment and a 2014 Toyota Tundra, valued at $9,500. The parties also agree that Mounts signed a retail installment contract for the vehicle—to be assigned to the Credit Acceptance Corporation ("CAC")—in which he agreed to finance $21,838.28 at an annual percentage rate of 18.99%, totaling

$33,993 in payments and resulting in a final sale price of $44,493. (Doc. 27, PageID 424).

After Mounts and DeBruhl took possession of the vehicle and returned home, Mounts alleges that they "read the paperwork" and "were shocked to learn of [the financing] numbers." (*Id.*, PageID 393). Following a phone call between DeBruhl and Sturgill on April 12, Mounts retained the services of attorney Steven Shane, who in turn began to correspond with CAC and eventually with Roadstar, represented by attorney Jeffrey Burd. Believing that Mounts was exercising his statutory right to rescission, Roadstar cancelled the financing contract and informed Mounts that it would refund his down payment, trade-in value, and financing payment upon the return of the vehicle to their dealership, thereby returning the parties to the pre-purchase status quo. (Doc. 36, PageID 804).

The vehicle was never returned to Roadstar, however, and Mounts did not collect his refunds. Mounts now brings two claims against Roadstar—the first under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., and the second under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01, et seq. In its motion for summary judgment, Roadstar argues that Mounts refused to honor his own offer of rescission, and "instead tried to re-negotiate the [rescission] deal to include attorney fees." (*Id.*). Mounts counters in his own motion for summary judgment that he "was entitled to reimbursement for attorney fees he expended," but Roadstar "unilaterally declared the case settled and refused to budge from its position." (Doc. 27, PageID 394).

3

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that a fact is "material" only when its resolution affects the outcome of an action, and a dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If the moving party has satisfied its initial burden of showing the absence of a genuine issue of material fact, the nonmoving party may not rest on the mere allegations in the pleadings, but must instead put forth specific facts showing that there is a genuine issue for trial. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). This standard of review remains the same for reviewing cross-motions for summary judgment. *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441-42 (6th Cir. 2021); *see Harris v. City of Saginaw*, 62 F.4th 1028, 1032-33 (6th Cir. 2023) ("In review of the *defendant's* motion, we accept the *plaintiff's* view of the facts as true and draw all reasonable inferences in favor of the *plaintiff;*" whereas "in review of the *plaintiff's* motion, we accept the *defendant's* view of the facts as true and draw all reasonable inferences in favor of the *defendant*.").

### III.    ANALYSIS

#### a.  OCSPA

Mounts first contends that Roadstar violated the OCSPA both when it failed "to sell a motor vehicle at the advertised price," and when it did not transfer the vehicle's title within forty days of that sale. (Doc. 27, PageID 387). But as a threshold matter, the Court must determine whether—as Roadstar argues—Mounts foreclosed any ability to recover damages or file suit in the first place by choosing to rescind the consumer transaction.

Under the OCSPA, an aggrieved consumer may choose one of two remedies: they "may 'rescind the transaction or recover [their] actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages.'" *J & D Rack Co., Inc. v. Kreimer*, 2011-Ohio-2358, ¶ 15 (1st Dist.) (quoting Ohio Rev. Code § 1345.09(A)); *see* 1 Anderson's Ohio Consumer Law § 3.27 (2025) ("Rescission is a completely alternative remedy to damages under the CSPA."). "The law highly favors settlement agreements." *Infinite Sec. Solutions, L.L.C. v. Karam Props. II*, 37 N.E.3d 1211, 1216 (Ohio 2015)

Rescission, much like any other settlement agreement, "is a particularized form of a contract," *Breech v. Liberty Mut. Fire Ins. Co.*, 2017-Ohio-9211, ¶ 34 (5th Dist.). Notably, "[i]f a contract encompasses the essential terms of an agreement, it is binding and enforceable." *Id.* "Once a settlement offer has been accepted, the settlement agreement is mutually binding; the settlement agreement cannot be set

aside simply because one of the parties later changes its mind." *Zele v. Ohio Bell Tel. Co.*, 2023-Ohio-2875, ¶ 35 (8th Dist.).

While there must be a meeting of the minds over essential terms, "not every disputed term raised by a party to a settlement discussion is an 'essential' term impeding the existence of a settlement agreement." *Moton v. Schafer*, 2022-Ohio-3505, ¶ 20 (6th Dist.). Indeed, "where 'the essential terms' of a settlement agreement have been established, certain terms . . . 'are secondary to the meeting of the parties' minds on the essential terms of the agreement.'" *Smith v. PGN OP. Echo, LLC*, 2025-Ohio 185, ¶ 33 (10th Dist.) (quoting *Kinnett v. Corp. Document Solutions, Inc.*, 2019-Ohio-2025, ¶ 30 (5th Dist.)); *see Breech* at ¶ 41 ("If a contract encompasses the *essential* terms of an agreement, it is binding and enforceable. If *less essential terms* are omitted from an agreement, they may be resolved by later agreement or judicial resolution.").

Although Mounts acknowledges repeatedly that he opted for rescission and "authorized counsel to demand statutory rescission on his behalf," (Doc. 27, PageID 393), he proceeds to argue that Roadstar did not actually accede to his demand and instead "unilaterally declared the case settled and that all of Plaintiff's claims were released through some imaginary settlement refusing to consider paying any further damages or attorney fees," (*Id.*, PageID 388). Roadstar counters that its acceptance of the demand for rescission "was clearly communicated in a reply email and also accepted by performance—the financing was called off and the first payment refunded." (Doc. 33, PageID 753).

6

The record before the Court includes two certified letters written by Steven Shane that are particularly helpful for the Court's purposes. In the first—dated May 13, 2024, and addressed to the Credit Acceptance Corporation ("CAC")—Shane elaborates upon the allegations against Roadstar and represents that Mounts is entitled to "significant damages . . . which would make rescission not the most appropriate remedy." (*Id.*, PageID 764).

But in an apparent about-face, the second letter—dated May 21, 2024, and addressed to both CAC and Jeffrey Burd—is entitled "re: Larry J. Mounts vs. Roadway (sic) Motors LLC., et al., NOTICE AND DEMAND FOR RESCISSION PURSUANT TO O.R.C. § 4505.181(B)(1)." (*Id.*, PageID 765). Shane proceeds to note that Roadstar failed to tender the vehicle title to Mounts within the statutorily-defined period,[1] and asserts accordingly that "[t]his failure entitles our client to full rescission of this transaction and to receive a refund of all payments including their down payment as well as payments made to the third party financing source as well as being released from this obligation with CAC which they hereby demand." (*Id.*, PageID 765-66).[2] The second letter ends with a clear request to "[p]lease act accordingly to allow Mr. Mounts to rescind this transaction."[3] (*Id.*, PageID 766).

---

[1] It is unclear to the Court whether the title was in fact tendered in a timely fashion, partly due to Sturgill's assertion to DeBruhl on April 12 that he "transferred the title over into your name already." (Doc. 27, PageID 501). Regardless, the answer to that question would not change the Court's conclusions here.

[2] In deposition testimony, Mounts confirmed his preference for rescission at the time Shane sent the demand letter. (Doc. 31, PageID 728). Mounts was well aware of that remedy because DeBruhl, as early as two days following the purchase, told a Roadstar salesperson that she "wanted to bring the truck back and cancel everything and take my trade-in home and give him his vehicle back." (Doc. 30, PageID 675).

[3] A slightly different version of this letter, bearing the same date and subject line, is among the summary judgment evidence submitted by Mounts. (Doc. 27, PageID 509-10). Although this

In an email written following receipt of Shane's letter on May 21, Burd responds that Roadstar "accedes to and accepts" Mounts's outstanding demand for rescission. (*Id.*, PageID 769). That acceptance is further evidenced by the actions of Roadstar's manager Anis Cherradi, who had cancelled the transaction and obtained "a refund check from Credit Acceptance Corp. made payable to Larry Mounts." (*Id.*, PageID 761). But in another letter to Burd dated seven days later, Shane attempts to add a previously undiscussed term to the rescission agreement: "$3[,]150 reimbursement for attorney fees for all time spent to date." (*Id.*, PageID 772).[4]

Based upon the facts and circumstances before it, the Court concludes that the parties reached a meeting of the minds on May 21 as to the essential term of their agreement, rescission. The record is entirely devoid of any discussions regarding attorney fees prior to Shane's correspondence with Burd on May 28 and May 29, and Mounts did not so much as reference attorney fees in the details of his "NOTICE AND DEMAND FOR RESCISSION" on May 21. (Doc. 33, PageID 765-66). By his unequivocal written demand for rescission, Mounts essentially offered "to return all money, property[,] or other benefits received under the instrument," thereby returning the parties to the status quo. *Ady v. Miller Day Iseli Energy Co.*, No. 624, 1987 Ohio App. LEXIS 7242, at *5 (7th Dist.). And because Roadstar unequivocally accepted the demand as it was stated, Mounts is bound to the rescission.

---

alternative version omits the request to "act accordingly to allow Mr. Mounts to rescind this transaction," it contains identical language regarding the entitlement to rescission.

[4] Although Shane acknowledged later that "R.C. 4505.181 doesn't expressly provide for recovery of fees," he argued to Burd that the alleged deceptive sales practice "obviously provides for attorney fees." (Doc. 33, PageID 772). But Ohio courts have been clear that even "the 'knowing' commission of an act that violates [the OCSPA] does not mandate the imposition of attorney fees." *White v. Lima Auto Mall, Inc.*, 2009-Ohio-411, ¶ 20 (3d Dist.) (quoting *Charvat v. Ryan*, 879 N.E.2d 765, 772 (Ohio 2007)).

**b. TILA**

TILA was enacted as a means "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). "TILA requires a creditor to 'disclose to a consumer buying on credit exactly how much he will pay for that credit.'" *Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 40 (2d Cir. 2011) (quoting *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 932 (7th Cir. 1998)); *see Diaz v. Paragon Motors of Woodside, Inc.*, 424 F.Supp.2d 519, 529 (E.D.N.Y. 2006) ("TILA requires clear and accurate disclosures by creditors to consumers of any finance charge that the consumer will bear under the credit transaction.").

As relevant here, a finance charge is defined under TILA "as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Notably for these purposes, fees charged by third parties need not be classified as finance charges under TILA unless a seller "[r]equires the use of a third party as a condition of or an incident to the extension of credit," or "[r]etains a portion of the third-party charge." 12 C.F.R. § 1206.4(a)(1).

Mounts alleges that Roadstar violated TILA by "failing to make accurate credit disclosures required by 15 U.S.C. [§] 1638(a)." (Doc. 13, PageID 108). Specifically, Mounts contends that Roadstar impermissibly charged Mounts $28,999 for the

vehicle, as opposed to the $16,999 base price that DeBruhl says she saw on the Facebook Marketplace advertisement. (*Id.*). Roadstar did so, Mounts argues, by folding a hidden financing charge (what Roadstar effectively represents as a CAC's time-price differential for subprime borrowers) into the cash price of the vehicle.

For its part, Roadstar counters that the high-risk finance fee was a "third-party lender fee" that it did not retain. (Doc. 33, PageID 754-55). Pointing to a dearth of evidence suggesting that the extension of credit was conditioned on the use of a third party, Roadstar then argues that the fee was exempt from the TILA disclosure requirements at issue—in other words, "not a[] 'finance fee' that must be separated from the purchase price." (*Id.*, PageID 755). And Mounts does not argue that the fee was hidden entirely, nor could he, because the purchase contract stated a base cash price, the amount Mounts would be financing, the total of his payments along with the total number and amount of each individual payment, and the total sale price of the vehicle.

Based upon the pleadings and evidence properly before the Court at this juncture, the Court must enter summary judgment on Mounts's TILA claim in favor of Roadstar. To be sure, the Court is not without concerns over the propriety of including a third-party fee into the base cash price of a vehicle, even if that fee is exempt from the statutory scheme's disclosure requirement. But the question before the Court is not an equitable one of whether rolling high fees into the price of an item is a scrupulous practice. Rather, the question before the Court is whether Roadstar violated TILA in this instance.

According to the testimony of Anis Cherradi, the "purchase of the 2016 GMC Canyon was financed by a high-risk financing policy that carried significant lender fees of thousands of dollars," which were in turn financed by Mounts. (Doc. 33, PageID 760). On its face, this *could* point to an unlawful hidden finance charge.  However, Cherradi proceeds to declare that the lender fees in question "go to the financing companies and not Roadstar." (*Id.*). This is again alluded to in Sturgill's testimony and then set forth outright in Roadstar's pleadings: "Here, Roadstar did not retain any portion of the third-party lender fee." (*Id.*, PageID 755).

In response to that assertion, Mounts has presented not a scintilla of evidence on summary judgment, direct or otherwise, to show that Roadstar retained (or would have retained, had the transaction not been cancelled) any part of the disputed lender fee. And "[t]he 'mere possibility' of a factual dispute is not enough." *Pitcher v. Waldman*, 2012 U.S. Dist. LEXIS 152087, at *11-12 (S.D. Ohio Oct. 23, 2012) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). Thus, because "[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment," Roadstar is entitled to judgment as a matter of law. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

## IV.    CONCLUSION

For the foregoing reasons, Mounts's motion for summary judgment is **DENIED**, and Roadstar's motion for summary judgment is **GRANTED**. Roadstar's

motion to strike is **DENIED** as moot, and the parties will bear their own fees and costs.

Within ninety (90) days of the date of this order, Mounts must either (1) facilitate the return of the subject vehicle to Roadstar (whereupon the deposit, trade-in value, and financer check will be tendered to Mounts); or (2) tender a payment of $6,499 (plus any applicable state taxes and fees) to Roadstar, representing the difference between the advertised all-cash sales price of the vehicle and the amount Mounts paid through his down payment and trade-in.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*

Michael R. Barrett
United States District Judge